United States Courts
Southern District of Texas
FILED

JUN 30 2025

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN GBEJULE ODAIBO | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION No.: 4:25-cv-02743 |
| NOVARTIS PHARMACEUTICALS CORPORATION | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT[1]

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Stephen Gbejule Odaibo ("Dr. Odaibo" or "Plaintiff") is the owner of the copyright for the "Macular Degeneration: Causes, Symptoms, and Treatments" video lecture (U.S. Copyright Registration #: PA0002534033), and brings this complaint of copyright infringement against Defendant, Novartis Pharmaceuticals Corporation ("Novartis" or "Defendant"), as follows:

### PARTIES

1. Dr. Odaibo is a Texas resident residing in the Southern District of Texas; and with a retina practice in the Southern District of Texas, and in Houston in particular.

2. Novartis Pharmaceuticals Corporation is a business headquartered in East Hanover, New Jersey. At all times material to this action, Novartis has continuously had offices, sales personnel, and staff in Texas for its substantial business operations in Texas and the Southern District of Texas, including but not limited to places such as MD Anderson Cancer Center, Texas Medical Center, and throughout the State of Texas.

---

[1] Pursuant to Fed. R. Civ. P. Rule 15(a)(1).

## JURISDICTION AND VENUE

3. This court is vested with subject matter personal jurisdiction pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., and 28 U.S.C. §§ 1331 and 1338(a).

4. Novartis is subject to this Court's specific personal jurisdiction under due process.

5. Novartis has substantial business operations and contacts in Texas and in the Southern District of Texas which arise from, or are directly related to Plaintoff's cause of action for copyright infringement.

6. Venue is proper in this District Court under 28 U.S.C. § 1391(b) and 1400 in that the Defendant conducts business in the State of Texas and within this District.

## FACTUAL ALLEGATIONS

7. Plaintiff, Dr. Odaibo is a retina physician who authored a video lecture titled "Macular Degeneration: Causes, Symptoms, and Treatments." Plaintiff is the copyright owner of "Macular Degeneration: Causes, Symptoms, and Treatments," and has complied with the statutory registration and deposit requirements of the Federal Copyright Act of 1976.

8. Defendant, Novartis is a Delaware C Corporation headquartered in East Hanover, NJ. Notably, Defendant Novartis is the dominant majority of a global pharmaceutical giant (Novartis Group, Headquartered in Basel, Switzerland) with a market capitalization of $234 Billion (NYSE: NVS; June 11th, 2025) and $50 Billion of annual revenue (Novartis Q4 2024 Earnings Report). An estimated 80% (or $40 Billion) of that annual revenue is generated directly by the Defendant Novartis. Furthermore, the largest piece (i.e. 40% or $20 Billion) of Novartis Group's annual revenue is generated from its business operations in the United States; and a large fraction of that is generated within the State of Texas.

9. Defendant Novartis' main sources of revenue are from oncology (30%), immunology (20%), cardiovascular/renal/metabolic (20%), and neurology (10%). In particular, prior to

October 2019, Defendant had no approved drugs for treating retinal conditions such as macular degeneration and diabetic retinopathy.

10. Defendant's competitors Roche and Regeneron, have each had drugs for treating retinal conditions such as macular degeneration and diabetic retinopathy since 2006 and 2011 respectively. These drugs are injected into the eye and belong to a class called "anti-VEGF" drugs. The anti-VEGF retinal drug market is very large and growing, and is projected to reach $21.4 Billion annual revenue by 2033 (per DataHorizzon Research). As such, Defendant Novartis made — and continues to make — targeted efforts to develop an anti-VEGF drug to enable them to compete in the retina market in the United States and elsewhere.

11. In October 2019, Defendant's efforts finally resulted in a United States Food and Drug Administration (FDA) approved retinal drug, Beovu (aka RTH258 aka Brolucizumab). However, several months prior to that approval, Defendant Novartis, recognized that it had one very big problem. Novartis as a company and Novartis' Sales/Marketing field personnel in particular, had no prior experience with the anti-VEGF retinal drugs. None. Despite the fact that at the time (Q1-Q3 2019) Defendant Novartis was the 2nd largest pharmaceutical company in the world by market capitalization, its existing drug portfolio and consequently, its sales and marketing knowledge, experience, and skills were not in anti-VEGF retinal drug segment. Novartis needed help and needed it urgently.

12. To succeed in the market with its anticipated new product launch, Defendant Novartis recognized the critical need to fill in the gaps in its sales forces' knowledge and experience ahead of the launch. In particular, it needed to conduct sales and marketing training not only for a new drug, but for a category of drugs that was entirely new to the Defendant as a company; and was entirely new to its sales personnel. Furthermore, the method of administration of the drug (injection of a drug into the vitreous cavity of the eye) was entirely new to the Defendant Novartis and its sales force. The knowledge,

experience, and skills gaps the Defendant urgently needed to fill included: the anti-VEGF retinal drug indications (i.e. the diseases the drugs are used to treat, e.g. macular degeneration, diabetic macula edema), the symptoms of those diseases, the physiology of those diseases, the available treatment options, the manner of administration of the drugs (injecting into the eye), the details of the injection procedure, the experience and perspective of the physician, and the patient's experience during and after the injection of the drug into the eye.

13. In 2018, the year preceding Defendant's entry into the retinal eye injection market, its two competitors Regeneron and Roche generated global revenue of $6.4 Billion and $3.7 Billion respectively from their respective retinal eye injection drugs, Eylea (Regeneron) and Lucentis (Roche). Based on those revenues, at time of launch in 2019, financial analysts projected peak sales of $2.5 Billion annually for Defendant from Beovu (See: "Novartis gains FDA approval of Beovu for treatment of wet age-related macular degeneration" Matthew Dennis; FirstWordPharma, October 8th, 2019). Defendant was therefore highly focused on this launch of Beovu as a big commercial opportunity, and one for which the training and upskilling of their sales staff was especially crucial to Defendant's financial success with this venture which was entirely new to Defendant.

14. During the training of its sales staff for the explicit purpose of launching Beovu, Defendant Novartis proceeded without authorization to obtain, copy, and distribute Plaintiff Dr. Odaibo's copyrighted video lecture "Macular Degeneration: Causes, Symptoms, and Treatments" from YouTube; and Defendant proceeded to use the video for the purpose of training and equipping its entire United States national sales force for the express purpose of the Beovu launch and continued marketing. The infringement was done explicitly for financial gain.

15. Defendant's United States' sales force dedicated to the Beovu launch and continued marketing consisted of approximately 60 persons initially.

16. Defendant, Novartis, assessed that Plaintiff, Dr. Odaibo's copyrighted work is of great value for the training and equipping of its entire sales and marketing personnel for the purpose of launching and continuing marketing of Beovu. As such, Defendant Novartis proceeded, but without authorization, to obtain, copy, and distribute Plaintiff Dr. Odaibo's copyrighted work and use it for the purpose of training and equipping its entire United States sales and marketing team specially dedicated to launching and continuous marketing of Beovu. The infringement of Plaintiff Dr. Odaibo's copyrighted work was itemwillful and was done explicitly for financial gain.

17. Per Novartis' financial results, Beovu generated a revenue of $35 Million for Defendant Novartis in its opening quarter (Q4 of 2019); it generated $190 Million in 2020; $186 Million in 2021; $203 Million in 2022; and approximately $200 Million in 2023 ($51 million in Q1, $53 million in Q2, $47 million in Q3, and Q4 unreported). Defendant's Beovu revenue for Year 2024 and Q1 2025 are not itemized separately.

18. Per Defendant's financial reports as outlined in the aforementioned, Defendant has made over $1 Billion in revenue from Beovu to date. Specifically, Defendant's revenue from Beovu is estimated to be approximately $1.1 Billion.

19. Plaintiff Dr. Odaibo's copyrighted work contributed very directly to the profits Defendant Novartis generated from sales of Beovu.

20. During a training and equipping session that was being conducted by Defendant Novartis for its Beovu sales and marketing team, one of the sales representatives sent the following written message to Plaintiff Dr. Odaibo:

> "…
>
> Hope you remember me. …
>
> Wanted to share a couple of things with you!
>
> First, I made the cut to be in our newly formed retina team that will hopefully be launching RTH258 [Beovu]

> The team is all being trained right now. Very comprehensive and thorough. Well along with the Novartis training people are sending around great you tube videos to aid in our learning
>
> Well right now I am listening to a 48 minute you tube video where you are presenting and explaining nAMD to a room of patients and caregivers
>
> Just thought you would get a kick out of the fact the entire nation (60 reps) are listening to you teach!
>
> …"

21. Defendant Novartis willfully attempted to conceal its unauthorized use of Plaintiff's copyrighted work which it used for training and equipping of its entire dedicated sales force for the express purpose of launching and continuous marketing of Beovu.

22. Defendant Novartis continued to sell and market Beovu, listing it as a separate line item on its quarterly financial report as recently as Q3 2023 (published October 23rd, 2023).

23. Plaintiff Dr. Odaibo made multiple unsuccessful attempts to engage with Defendant Novartis. For over one year, several emails were exchanged between Plaintiff and Defendant, during which Defendant did not respond to Plaintiff's request for discussion of the copyright infringement allegation. Instead, Defendant simply repeatedly informed Plaintiff that Defendant will get back to Plaintiff. This went on for more than one year. Finally, and only recently, Defendant only began to respond after Plaintiff informed Defendant that litigation would become necessary if no response was received.

24. This extended delay indicates willfulness and bad faith on Defendant's part.

25. Amongst Defendant Novartis' multipronged (but internally inconsistent) attempt to prevent Dr. Odaibo from exercising his copyrights, during the course of an email exchange Defendant altered the above quoted text from its then employee. Furthermore, Defendant perpetrated the said text alteration in a manner to willfully change its meaning so as to conceal the copyright infringement. Furthermore, Defendant surreptitiously

perpetrated the alteration without any annotation to inform Plaintiff of the alteration. This provides further evidence that the copyright infringement was done willfully and in bad faith.

26. Defendant is a global pharmaceutical giant with a large, sophisticated, well-resourced, and experienced legal team specializing in intellectual property law. Defendant's delay in engaging with Plaintiff, Defendant's obstruction of discovery of infringement, and Defendant's multipronged (but internally inconsistent) effort to prevent Dr. Odaibo from exercising his copyrights are not accidental, but instead are strategic and tactical. This demonstrates willfulness and bad faith on Defendant's part.

## FIRST CLAIM FOR RELIEF
## (FOR COPYRIGHT INFRINGEMENT)

27. Plaintiff Dr. Odaibo incorporates and realleges herein by reference paragraphs 1 through 26, inclusive, as though fully set forth herein.

28. Dr. Odaibo is the sole and exclusive owner of the copyrights in the video.

29. Dr. Odaibo is the sole and exclusive owner of the Copyright Registration Certificate.

30. Without authorization, Defendant Novartis obtained, viewed, copied, and distributed the video, using it to train and equip its entire United States sales force for the express purpose of launching and continuously marketing retinal drug Beovu. This happened on multiple occasions until at least Q3 of 2023, thereby constituting a continuous pattern of multiple acts of unlawful infringement by Defendant Novartis. In particular, the last known infringing act committed by Defendant Novartis on Dr. Odaibo's copyright in the video occurred less than three years prior to the date of the filing of this complaint.

31. Without authorization, Defendant Novartis obtained, viewed, copied, and distributed the video, and therefore infringed Dr. Odaibo's copyright in the video. This happened on multiple occasions until at least Q3 of 2023, thereby constituting a continuous pattern of

multiple acts of unlawful infringement by Defendant. In particular, the last known infringing act committed by Defendant Novartis on Dr. Odaibo's copyright in the video occurred less than three years prior to the date of the filing of this complaint.

32. Defendant Novartis performed copyright infringement of Dr. Odaibo's video, and did so expressly for commercial gain.

33. Defendant Novartis' infringement of Dr. Odaibo's copyright in the video contributed directly and significantly to the revenue generated by Novartis from Beovu sales ($1.1 Billion) to date.

34. Defendant Novartis' infringement was willful and in bad faith.

35. Defendant Novartis' was fully aware that its actions were wrong and unauthorized as evidenced by Defendant's attempts to conceal its actions, obstruct and delay discovery of infringement, and frustrate Plaintiff's persistent attempts at discussion.

36. Defendant's deliberate disregard of Dr. Odaibo's rights is part of a historical pattern of conduct perpetrated by the defendant.

37. Defendant's knowing and willful copyright infringement as alleged herein has caused and continues to cause harm to Plaintiff; and has caused and continues to cause harmful loss of economic opportunity to Plaintiff.

38. Defendant's act of willful copyright infringement against Plaintiff is a wanton, reckless, and truly unnecessary attempt by a global pharmaceutical giant to maliciously exploit Plaintiff's labor, and to do so expressly for commercial gain; thereby causing Plaintiff immense and harmful loss of economic opportunity. Plaintiff is therefore entitled to injunctive relief, actual damages, and Defendant's profits.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. Defendant be ordered to pay to Plaintiff actual damages, plus the amount of Defendant's profits attributable to the infringement, 17 U.S.C. § 504(b);

    a. Defendant be ordered to pay Plaintiff an amount no less than 1% of Defendant's gross revenue from Beovu sales;

    b. In particular, per Defendant's estimated gross revenue of $1.1 Billion from Beovu sales, Defendant be ordered to pay Plaintiff an amount no less than $11 Million;

2. Defendant deliver to be impounded during this suit all copies of the video in its possession or control pursuant to 17 U.S.C. § 504(c);

3. Pre-judgement interest at the legally allowable rate on all amounts owed;

4. For preliminary and permanent injunctions by this Court prohibiting Defendant from engaging or continuing to engage in unlawful conduct that infringes Plaintiff's copyright in the video;

5. For preliminary and permanent injunctive relief against Defendant, including its officers, agents, servants, employees, attorneys, and representatives from reproducing, making derivative works of, distributing, or displaying the video;

6. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues triable by jury.

Respectfully submitted,
By: /s/ Stephen G. Odaibo
16107 Kensington DR #182
Sugar Land, Texas 77479
Email: stephen.odaibo@gmail.com
Phone: (979) 429-3815

PLAINTIFF, PRO SE